# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KIM A. DOUGHERTY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CHISAGO COUNTY,<br><br>　　　　Defendant. | CIVIL NO. 11-CV-2404 (PJS/TNL)<br><br>**REPORT<br>&<br>RECOMMENDATION** |

Kim A. Dougherty, 11395 Stinson Ave., Chisago City, Minnesota 55013, *pro se* Plaintiff; and

Margaret A. Skelton, Trevor S. Helmers, **RATWIK ROSZAK & MALONEY, PA**, 730 2nd Avenue South, Suite 300, Minneapolis, Minnesota 55402, for Defendant.

This matter is before the Court, Magistrate Judge Tony N. Leung, on Defendant Chisago County's Motion for Summary Judgment (Docket No. 27). The action has been referred to the magistrate judge for report and recommendation to United States District Judge Patrick J. Schiltz under 28 U.S.C. § 636 and Local Rule 72.2(b). The Court held a hearing on December 17, 2012. Plaintiff appeared *pro se*, and Margaret Skelton appeared on behalf of Defendant.

For the reasons set forth below, **IT IS HERERBY RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket No. 27) be **GRANTED.**

## I. FACTS

### A. Dougherty's Employment with Chisago County

Dougherty began working for Chisago County in March 2000 as a Maintenance Assistant. (Dougherty Depo. at 23-24.) She reported to Jon Thompson, the Building Maintenance Supervisor. (Def. Ex. 9.) As her supervisor, Thompson had the authority to assign Dougherty tasks, duties and work locations, and to set her hours. (Def. Ex. 10, Admis. 27.)

Dougherty's position required her to perform various routine building and ground maintenance work and custodial duties, including plowing and shoveling snow, sweeping and salting sidewalks, and supervising community service workers. (Def. Ex. 9.) Dougherty was encouraged to use Sentence-to-Serve ("STS") inmates to help facilitate snow shoveling and removal around the Chisago County Jail and Government Center ("Government Center"). (Dougherty Depo. at 47-48.) Chisago County provided a set of guidelines for Dougherty to follow when she used STS inmates. (Def. Ex. 28.) These guidelines provide that the STS inmates must not "be left unsupervised at any time" and "[n]o [STS] crewmember will be released to go to the Government Center without an escort from County Maintenance." (*Id.*) Dougherty signed a copy of these guidelines. (*Id.*)

Chisago County also provided Dougherty with a copy of its identification badge policy. (*See* Def. Ex. 29.) This policy provides that "[b]adge abuse or unauthorized use of a badge may be considered grounds for disciplinary action." (*Id.*) The policy further provides that "permit[ting] access of the building by unauthorized users" is a form of

badge abuse. (*Id.*) Dougherty was aware of Chisago County's badge policy. (Dougherty Depo. at 33-34.)

Throughout her employment with Chisago County, Dougherty was the subject of disciplinary actions. By her own admission, she received "a lot" of reprimands from the County. (Dougherty Depo. at 163.) In February 2008, Dougherty was reprimanded and suspended for three days without pay for being late to work and untruthful with her supervisor when asked why she was late. (Def. Ex. 3.) In June 2009, the County reprimanded Dougherty for "inconsistent attendance at work" and an apparent "abuse of sick time." (Def. Ex. 4.) On that occasion, the County suspended Dougherty for five days without pay. (*Id.*)

Dougherty underwent an annual performance appraisal in April 2010. (Def. Ex. 7.) The appraisal noted that Dougherty's excessive absence from work strained the maintenance department. (*Id.* at 2.) The appraisal also noted that Dougherty "need[ed] to work on keeping her County cell phone charged and on her" and warned that she might receive disciplinary action if this concern was not addressed. (*Id.*) The appraisal reminded Dougherty that she must work her scheduled hours and that carrying her County cell phone was "a part of her job." (*Id.*) Dougherty reviewed and signed the performance appraisal. (*Id.* at 3.)

Dougherty's attendance issues continued. According to the County's door-access records, she arrived to work late 22 out of 24 shifts in April and early May, 2010.[1] (Def. Ex. 11.) On May 13, 2010, Thompson issued Dougherty a verbal warning "due to [her] inability to arrive to work on time." (*Id.*) The warning noted that more attendance and performance problems like those addressed in the April 2010 appraisal "will result in further disciplinary action up to and including [Dougherty's] dismissal from the County." (*Id.*) On August 31, 2010, Dougherty received an oral reprimand for failing to follow the County's "Badge In/Out" procedures. (Def. Ex. 12.) She also received reprimands for failing to have her County cell phone on her at all times (Def. Ex. 13), for arriving late to work eight times in August 2010 (Def. Ex. 14), and for being unable to perform essential duties of her position (Def. Exs. 15, 16).

### B. Dougherty's First EEOC Complaint

Dougherty filed a charge of discrimination with the EEOC in November 2009. (Def. Ex. 18.) In it, she alleged that the County had discriminated against her because of her disability and "in retaliation for requesting reasonable accommodation in violation of Title I and V of the American's with Disabilities Act of 1990." (*Id.*) She also alleged that the County discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act. (*Id.*) On August 9, 2010, the EEOC dismissed Dougherty's charge and issued her a right-to-sue letter that informed her that any suit pursuing the claims in her charge of discrimination "must be filed within 90 days of [her] receipt of

---

[1] At oral argument, Dougherty stated that it was not true that she was late 22 out of 24 shifts, and directed the Court to Defendant's Exhibit 11. Defendant's Exhibit 11 shows 24 badge-in times, 22 of which occurred after her 7:00 a.m. start time.

[the EEOC's] letter." (Def. Ex. 19.) Dougherty did not file suit against Chisago County within 90 days of receiving the letter.

### C. Dougherty's Termination

On December 11 and 12, 2010, Dougherty supervised snow removal around the Government Center following a snowstorm. (*See* Def. Ex. 21.) Dougherty called Thompson to discuss plowing and weather conditions on December 11, and they agreed that Thompson would not come to help Dougherty plow unless she called and requested his help. (*Id.* at 1.) Dougherty used STS inmates for over two hours on December 11. (*Id.* at 2.) Dougherty returned to the Government Center to plow on December 12, and used the STS inmates for four and a half hours that day. (*See id.* at 2.) Also on December 12, Dougherty gave her County ID badge to an STS inmate. (Dougherty Dep. at 32.) This inmate was Dougherty's cousin, Nate. (*Id.* at 38.) Nate and another inmate used Dougherty's badge to enter the Government Center without a supervisor. (*Id.*) Dougherty never called Thompson to ask for assistance.

On December 14, Thompson arrived at work and found that snow had been pushed from the handicap parking area onto the road, and that neither the back emergency exits nor the back sidewalks of the Government Center were shoveled. (Def. Ex. 21 at 1.) On December 16, 2010, Dougherty was interviewed regarding her supervision of the STS inmates on December 12. (*See* Def. Ex. 21.) In the interview, Dougherty stated that she had allowed one STS inmate to use her ID badge to enter the Government Center and use the bathroom. (*Id.*) The inmate was out of her sight for five minutes. (*Id.*) The County informed Dougherty that it was considering terminating her

5

employment "for breaching Chisago County security and for violation of the county policy on identification badges." (*Id.*)

The County held a pre-termination meeting for Dougherty on December 21, 2010. (*See* Def. Ex. 30.) After failing to reach a resolution at the meeting, Dougherty and Chisago County entered into a Last Chance Agreement ("LCA") on January 3, 2011. (Def. Ex. 5.) Under the LCA, the County would not seek to terminate Dougherty's employment for unsatisfactory performance and excessive absenteeism, and Dougherty would waive her right to grieve a five-day, unpaid suspension. (*Id.*) Dougherty further agreed that the following conduct would constitute just cause for her discharge: failing to have her county-issued cell phone charged and on her at all times during working hours; failing to arrive at work at her specified start time of 7:00 a.m. or a time authorized by her supervisor; failing to perform her job at a "fully capable" level; refusing to follow written or verbal instructions from her supervisor; allowing any other person access to her ID badge; or failing to perform the functions of her position in a safe manner at all times. (*Id.*) Dougherty signed the LCA on January 6, 2011. (*Id.*)

On February 3, 2011, Dougherty was scheduled to begin work at 7:00 a.m. (*See* Def. Ex. 10, Admis. 20-21.) She called Thompson three minutes before 7:00 to inform him that she would be late because her car would not start. (Dougherty Depo. at 179-80; Def. Ex. 31 at 30.) On February 7, Thompson noticed that Dougherty spent "an excessive amount of time" removing a small amount of snow. (Def. Ex. 20.) He spoke with Dougherty about his concern that afternoon. (*Id.*)

On February 10, 2011, Thompson called Dougherty's County-issued cell phone at 8:58 a.m. while Dougherty was scheduled to be working. (Def. Ex. 32.) Thompson heard a ringing and looked around the corner. (*Id.*) "[Her] jacket was on the chair. The ringing appeared to be coming from [Dougherty's] locker." (*Id.*) Dougherty stated that she had left her phone in her jacket when she went to the restroom. (Dougherty Depo. at 56-57.) When Thompson asked why she hadn't had her phone on her, Dougherty responded that she "thought it was in her pocket." (*Id.* at 59-60.)

The County held another pre-termination meeting on February 14, 2011, to consider whether to terminate Dougherty's employment as a result of her violations of the LCA. (*See* Def. Ex. 33.) At the meeting, Dougherty admitted to being late without permission on February 3. (*Id.*) Dougherty also admitted that she did not have her county-issued cell-phone on her at 8:58 a.m. on February 10. (*Id.*) On February 16, 2011, Chisago County informed Dougherty that her employment was terminated for violating the LCA, effective February 23, 2011. (Def. Ex. 1.)

### D. Dougherty's Second EEOC Complaint and Other Claims

Dougherty filed a second discrimination claim with the EEOC and the Minnesota Department of Human Rights ("MDHR") on March 12, 2011, claiming that Chisago County discriminated against her on the basis of her age, disability and sex. (Def. Ex. 34.) The EEOC dismissed Dougherty's claim and issued her a right-to-sue letter on June 1, 2011. (Def. Ex. 35.)

Dougherty filed the instant suit on August 22, 2011, asserting the following claims: sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the

7

Minnesota Human Rights Act, Minn. Stat. § 363.01 *et seq.*; age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) *et seq.*, and the Minnesota Human Rights Act, Minn. Stat. § 363.01 *et seq.*; defamation; and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Am. Compl.) The parties engaged in discovery, and Chisago County moved for summary judgment on all counts. (Docket No. 27.) The Court heard oral argument on December 17, 2012.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden of demonstrating that no genuine issue of material fact remains to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to demonstrate that a disputed issue of material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B. Relevant Timeframe for Dougherty's Claims

As an initial matter, the Court notes that Dougherty did not pursue her first EEOC claim as Title VII requires. An employee who does not file suit "in federal court following receipt of a right to sue letter within the time period allowed under Title VII [, i.e., 90 days,] is barred from ever bringing a federal claim related to that EEOC charge even if a subsequent EEOC charge and right to sue letter reference the earlier acts."

*Frazier v. Vilsack*, 419 F. App'x 686, 689-90 (8th Cir. 2011). Dougherty filed her first EEOC complaint in November 2009 and received a notice of dismissal and right-to-sue letter on August 9, 2010. She did not file suit within 90 days of receiving the right-to-sue letter. Because she did not bring suit within the time period that Title VII requires, any occurrences that Plaintiff asserts as discrimination in violation of Title VII that occurred before November 2009 are time-barred.

ADEA plaintiffs must also timely file a charge with the EEOC. 29 U.S.C. § 626(d). Because Minnesota also has a law prohibiting age discrimination, the time to file a charge with the EEOC is 300 days. *See Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327 (8th Cir. 1995). "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court;" rather it is treated like a statute of limitations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Unlawful discrimination claims under the MHRA must be filed within one year of the alleged discriminatory practice. Minn. Stat. § 363A.28, subd. 3; *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 825-26 (8th Cir. 2008).

Dougherty's Amended Complaint alleges a number of discriminatory practices over the long course of her employment with Chisago County. Dougherty filed her EEOC and MDHR complaints on the same day: March 12, 2011. Because of the 300-day requirement, any discriminatory action that occurred before May 16, 2010 is time-barred. Accordingly, to the extent that Dougherty's claims allege age or gender discrimination in violation of Title VII, the ADEA, or the MHRA for conduct that

9

occurred before May 16, 2010, Chisago County is entitled to summary judgment on those claims.

### C. Discrimination Claims

Dougherty has put forth no direct evidence of any discrimination, whether gender- or age-based. Where no direct evidence exists, discrimination claims under Title VII, the ADEA, and the MHRA are analyzed under the *McDonnell-Douglass* burden-shifting analysis. *See Twiggs v. Selig*, 679 F.3d 990, 993 (8th Cir. 2012); *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007); *Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998). The *McDonnell-Douglas* analysis has three steps. First, the complainant must establish a prima facie case. If the complainant can establish a prima facie case, then the burden shifts to the employer to put forth a legitimate, nondiscriminatory reason for its action. *Wilking*, 153 F.3d at 872. If the employer puts forth a legitimate, nondiscriminatory reason for its action, the burden shifts back to the complainant to produce specific facts that show the employer's stated reasons were "mere pretext" for intentional discrimination. *Id.* at 873.

#### 1. Gender Discrimination

To establish a prima facie case of gender discrimination, Dougherty "must show that she (1) was a member of a protected class, (2) was qualified to perform her job, (3) suffered an adverse employment action, and (4) was treated differently from similarly-situated male employees." *Thomas*, 483 F.3d at 529-30 (citing *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 631 (8th Cir. 2005)).

Dougherty cannot make out a prima facie case of gender discrimination. Although she is a member of a protected class and suffered an adverse employment action, she has offered no evidence of a male employee who had also violated a LCA and was treated differently than she. Dougherty supports her case with generalities of being treated differently because she was a woman. The facts in the record, however, do not support her allegations. For example, Dougherty gave her ID badge to STS crew members (one of whom was her cousin) in violation of County policy; she failed to use proper procedure to call in when she was going to be late; and she failed to keep her County-issued cell phone on her person while she was on duty. The record does not reflect that any male employee who was involved in, or even accused of, the same conduct was treated differently than Dougherty was. *See Turner v. Gonzales*, 421 F.3d 688, 695 (8th Cir. 2005). Dougherty violated the STS supervision policy, and her tardiness and failure to keep her cell phone on her during work hours violated the plain terms of the LCA.

Dougherty also asserts that the County's decision to hire a male worker for the position of Facility Maintenance Engineer in 2006 was based on gender. However, because this occurred before May 16, 2010, this claim is time barred. Moreover, by her own admission, Dougherty has no evidence supporting her allegation that other County employees were treated differently on the basis of gender. Dougherty Depo. 201-02. Because Dougherty cannot make out a prima facie case of gender discrimination, the County is entitled to summary judgment on that claim.

## 2. Age Discrimination

Dougherty also brings a claim of age discrimination, alleging that her employment was terminated for reasons "that are both false and for which younger co-workers were not terminated." (Compl. ¶ 48.) Both the ADEA and the MHRA prohibit employers from discriminating against employees on the basis of age. 28 U.S.C. § 636(a)(1); Minn. Stat. § 363A.08, subd. 2. To make out a prima facie case of age discrimination, Dougherty must show that (1) she was at least forty years old, (2) she was meeting her employer's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) similarly-situated employees outside the class were treated more favorably. *Thomas*, 483 F.3d at 528 (citing *Hass v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005)).

At the relevant time, Dougherty was over 40 years old and was terminated by Chisago County, satisfying the first two elements an age-discrimination claim. The undisputed facts, however, show that she was not meeting the County's legitimate performance expectations. The record is replete with written and oral warnings that Dougherty received from her supervisor. On one occasion, her direct supervisor determined she spent an excessive amount of time shoveling "a dusting of snow." Def. Ex. 20. On another, she gave her ID badge to two STS inmates and allowed them to enter the Government Center without supervision in violation of the County's policy. Def. Ex. 21. She failed to keep her cell phone on her at all times while on duty. *See* Def. Ex. 33. She arrived to work late without authorization from her supervisor. *Id.* Each of these occurrences was a violation of the LCA. Dougherty has proffered no specific facts supporting her claim that the County's decision to terminate her employment was based

on her age, and no facts in the record support a finding that similarly-situated younger employees were treated more favorably than she.

### 3. Chisago County's Legitimate, Non-Discriminatory Justification

Even if it is assumed, *arguendo*, that Dougherty did establish a prima facie case of either age or gender discrimination (and she has not), the County has articulated a legitimate, non-discriminatory justification for her termination. On January 6, 2011, Dougherty signed the LCA, which stated that "fail[ing] to comply with or complete any one of the requriements specified below constitutes 'just cause' for [Dougherty's] discharge . . . ." (Def. Ex. 5.)

Dougherty does not dispute that her conduct violated the LCA. Despite the LCA's provision that Dougherty would arrive at work at 7:00 a.m. or at a time specified by her supervisor, she arrived to work at 7:23 a.m. on February 3, 2011, without her supervisor's authorization. Despite the LCA's provision that Dougherty would have her county-issued cell phone on her and charged at all times, she left her phone in her coat on February 10, 2011. Her tardiness and failure to keep her cell phone on her during work hours, in violation of the plain terms of the LCA, provided a legitimate, non-discriminatory basis for the County to terminate Dougherty's employment.

### 4. Dougherty Cannot Prove Pretext

In short, even if it is assumed, *arguendo*, that Dougherty did meet her prima facie burden (and she has not), the County has satisfied its burden. Therefore, the burden shifts back to Dougherty to show the County's proffered reason for terminating her employment was pretext for intentional discrimination. *See Mayer v. Nextel W. Corp.*,

318 F.3d 803, 807 (8th Cir. 2003). To prove pretext, a plaintiff must produce evidence sufficient to create both (1) a fact issue as to whether the County's proffered reasons are pretextual; and (2) a reasonable inference that the County's actual motivation for the adverse employment decision was discriminatory. *Haas*, 409 F.3d at 1035 (citing *Mayer*, 318 F.3d at 807). The plaintiff's evidence must be sufficient "for a reasonable trier of fact to infer discrimination." *Wilking*, 153 F.3d at 874 (quotations omitted).

Here, Dougherty has put forth no evidence to show that the County's proffered reasons were pretextual. When asked during her deposition why she thought the County's reasons for terminating her employment were pretextual, Plaintiff said that she believed the County's reasons were false because she did not believe she was in the wrong. Dougherty Depo. at 183. This is insufficient to carry her burden; a reasonable trier of fact would not infer discrimination simply because Dougherty disagreed with the County's reasons for firing her. Moreover, Dougherty as put forth no evidence that might create a reasonable inference that either age or gender was the determinative factor in the County's decision.

Based on Dougherty's failure to make out a prima facie case of either age or gender discrimination, the County's legitimate and non-discriminatory reasons for terminating Dougherty's employment, and the dearth of evidence supporting a finding of pretext for either age or gender discrimination, the Court determines that the County's motion for summary judgment on Dougherty's age- and gender-discrimination claims must be granted.

### D. Retaliation

Dougherty's retaliation claim is also analyzed under the *McDonnell-Douglas* framework. *See Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 859 (8th Cir. 1998). "A *prima facie* case of unlawful retaliation requires a showing that the employee engaged in some form of protected activity, that the employee was subject to adverse employment action, and that the adverse action was causally connected to the protected activity." *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 845 (8th Cir. 2002) (citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)). Because Dougherty has put forth no direct evidence of retaliation, the Court must analyze her claim under the *McDonnell Douglas* burden-shifting framework. *Thomas*, 483 F.3d at 530.

Dougherty argues that she was retaliated against because her employment was terminated after she filed an EEOC complaint. To prove a causal connection, Dougherty must prove that the County's "retaliatory motive played a part in the adverse employment action." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 896-97 (8th Cir. 2002). An inference of such a causal connection "can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006). Dougherty filed her EEOC complaint against the County in November 2009, more than a year before the County terminated her employment. Dougherty has put forth no evidence from which a reasonable juror could infer a causal relationship between her filing the November 2009 EEOC complaint and the County terminating her employment in February 2011. Although no bright-line legal rule setting an appropriate waiting period

exists, the facts alleged by Dougherty, even when accepted as true and with all reasonable inferences interpreted in a light most favorable to Dougherty, do not support a causal connection between Dougherty's EEOC filing and the County's adverse employment action more than a year later. *See Valdez v. Mercy Hospital*, 961, F.2d 1401 (8th Cir. 1992).

Moreover, even if it is assumed, *arguendo*, that Dougherty did make out a prima facie case of retaliation, the County has met its burden of proffering a legitimate basis for terminating her employment. As set forth above, Dougherty's violations of the LCA provided a legitimate, non-discriminatory basis for the County to terminate her employment, which Dougherty has failed to rebut. Accordingly, the County's motion for summary judgment on Dougherty's retaliation claim must be granted.

### E. Defamation

Finally, the County argues that Dougherty is unable to make a prima facie case of defamation. "To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement was communicated to someone other than the plaintiff, (2) the statement is false, and (3) the statement tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009) (quotation omitted). A defamatory statement, however, "is privileged if made upon proper occasion, from a proper motive, and based upon reasonable or probable cause." *Bauer v. State*, 511 N.W.2d 447, 449 (Minn. 1994) (citations omitted).

Dougherty's defamation claim must fail. Dougherty argues that Thompson made the following false statements to Kirchner: (1) Dougherty was unable to perform all the tasks expected of her position; and (2) Dougherty was easily distracted and would talk to people a lot. Thompson made these statements under oath at an Unemployment Hearing in response to direct questions from the Unemployment Law Judge. Def. Ex. 31 at 21l; Dougherty Depo. at 213-14. Thompson, Dougherty's supervisor, made these statements regarding Dougherty's behavior in connection with her job performance. He based his statements on his observation of Dougherty's work performance. Accordingly, the Court determines that Thompson made these statements upon a proper occasion, from a proper motive, and based upon reasonable or probable cause. Therefore, Thompson's statements are entitled to a qualified privilege. *See Bauer*, 511. N.W.2d at 450.

Dougherty may overcome this privilege by proving that Thompson made these statements with actual malice. "Actual malice means what it says: ill-will and improper motive or wishing wantonly and without cause to injure the plaintiff." *Id.* (citing *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 257 (Minn. 1980)). Malice can be shown my "intrinsic evidence," such as exaggerated language, the character of the language used in the statement, the mode and extent of the publication, and other matters that go beyond the scope of the privilege. *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144 (Minn. 1986) (quoting *Friedell v. Blakely Printing Co.*, 203 N.W. 974, 975 (Minn. 1925)).

Dougherty, however, has offered no evidence to prove that Thompson made the statements with actual malice. If a statement is conditionally privileged, as Thompson's

are, "the law does not imply malice from the communication itself, nor from its falsity . . . ." *Friedell*, 203 N.W. at 975. Although Dougherty argues that Thompson's statements were false, she offers no direct proof of personal spite. During her deposition, Dougherty made clear that she disagreed with Thompson's statements and thought they were false. Dougherty Depo. at 213-27. Dougherty has not, however, offered any evidence from which a reasonable juror could infer any actual malice on Thompson's part. Accordingly, Thompson's statements at the Unemployment Hearing were privileged, and the County is entitled to summary judgment on Dougherty's defamation claim.

## III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Chisago County's Motion for Summary Judgment (Docket No. 27) be **GRANTED** and this case be **DISMISSED WITH PREJUDICE.**

Date: March 27, 2013
s/ Tony N. Leung
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Dougherty v. Chisago County*
File No. 11-cv-2404 (PJS/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that

specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **April 10, 2013**.